322-0117, the people of the state of Illinois, Appalachia v. Alma L. Campos Gutierrez, Appellant. Thank you. Good morning. Ms. Yoruso, are you ready to start? I am, Your Honor. You may begin. Thank you. Good morning, Justices and Counsel. My name is Amanda Yoruso, and I represent the Appellant, Ms. Campos. Your Honors, the undisputed evidence in this case is that Ms. Campos stopped and returned to the scene of the accident. She provided her information to the driver of the vehicle that was involved in the accident, and she cooperated fully with the law enforcement officer that responded to the scene. She did not commit the crime of failure to stop after an accident involving personal injury, and the felony conviction should be reversed. I'm going to describe the facts briefly of what happened. Ms. Campos was driving with her 7-year-old daughter in the back seat in an area in Joliet where Route 30 and I-55 intersect. She was on her way to a Chuck E. Cheese and missed her turn to go to the restaurant. She attempted to make a U-turn and found herself on I-55 traveling southbound the wrong way against three northbound lanes of highway traffic. She was panicked, scared, and discombobulated. When this happened, she initially was driving perpendicular across the three lanes of traffic, and Mr. Caballos was driving a vehicle with his family in the car. He swerved to avoid colliding with Ms. Campos's car, first veering to the left and ultimately veering to the The cars did not crash. There's no evidence of any damage to the Caballos's vehicle or any collision that occurred with the rail. However, during the swerving, Juan Carlos, the Caballos's 18-year-old son, who was sleeping in the third row of seats without a seatbelt, was thrown from the vehicle. He suffered some injuries that were observed on the scene, including road rash, bumps, and bruises, and was ultimately treated for a hairline fracture in his toe at the hospital. Now, as this is all happening, Ms. Campos is doing her best to rectify the situation. She is proceeding southbound against the flow of traffic. She does a U-turn type maneuver, pausing briefly in the shoulder to get going in the correct lane of traffic northbound. And while this is happening, her daughter's also panicked and crying in the backseat. She's trying to take in everything that's happening. She does realize, and there's no dispute, that at some point she realizes an accident has taken place that a person was involved in. And that's important because that's one of the elements of the crime that creates this duty to stop at the scene of an accident. So when did she realize that? Well, there wasn't extensive evidence on this in the case, but it's rapidly unfolding. And as she realizes this, as she's observing the white vehicle on the shoulder. At the same time, she's in the process of turning around to go the correct direction of traffic, which is northbound, and find a place to safely stop, call the police, and do what she needs to address the situation. So it's not precisely clear from the evidence, but it's sometime during this rapidly unfolding series of events. And the testimony in this case was that from the moment that Mr. Caballos first sees her car crossing over the lanes of traffic, going southbound, and then he observes her proceeding northbound, that that was a minute or less, he says, that occurred in at most a minute when he sees her traveling northbound again. So this is a rapidly unfolding period of time, which only corroborates Ms. Campos' testimony that she's panicked and trying to find a safe place to stop and is not intending, and there's no evidence that she was fleeing the scene of the accident. Now, what happens next is, as she proceeds onward to find a safe place to exit and turn around to contact the police, is that Mr. Caballos gets into a car. His testimony was that he followed for about two miles before he caught up to her, and that she wasn't speeding, she was driving the speed limit and was either in the middle or right lane. So if you're driving the speed limit on the highway, two miles is about two minutes. This is not a lengthy period of time. And what happens when they catch up? Again, Ms. Campos responds to Mr. Caballos and makes efforts to do what she should do and what complies with the state statute. She pulls over, she provides in writing on a piece of paper to Mr. Caballos, her name, her email address, her driver's license number, and her insurance information. And then what happens next is Mr. Caballos reaches in her vehicle, opens the car door and gets in the vehicle, and then they testify it was unsafe to remain stopped there. He was in fear of being struck by a vehicle. So now Ms. Campos and Mr. Caballos together proceed onward to where they can safely exit and return to the scene of the accident, continuing what Ms. Campos was planning to do all along, which does not constitute fleeing. And certainly Mr. Caballos wasn't fleeing the scene of an accident. Quite simply, the state did not prove beyond a reasonable doubt that Ms. Campos failed to stop under the statute. They made much ado at trial and again in the response brief to this appeal about these two moments in time when Ms. Campos briefly pulled over before proceeding to the nearest safest exit in order to return to the accident scene. This evidence, rather than proving that Ms. Campos failed to stop, proves that Ms. Campos did not flee and was doing her best to assist the individuals involved in the crash. Pardon me, when she, after the fact that Mr. Campos' son was ejected from the car, and she's, pardon me, Mr. Caballos, is that how you say it? His son. Once he was ejected from the car and she's now immediately trying to turn around and go the right direction, she had to pass his car and the scene of the accident. Why did she not immediately pull over right there rather than continue, as you said, for at least two miles? Because she was looking for a safe place to actually stop, make a phone call, and return to the scene of the accident. She had a seven-year-old in her car with her. If she were to stop after passing him on the shoulder, which the evidence in this case was that that was an unsafe place to stop based on Mr. Caballos' own testimony, she would have been faced with the choice of either leaving her seven-year-old in a car on the shoulder of a busy highway or walking with her seven-year-old hand-in-hand along that shoulder, neither of which are safe options and neither of which the law requires. As the state acknowledged in their brief, according to the case law, specifically the case DeGirolamo, there is no affirmative duty to stop regardless of the circumstances of a collision immediately. The statute specifically has two options. One is to stop immediately at the scene, or the other is to stop as soon as possible and return forthwith as possible, naturally encompasses as soon as safely possible to do so. And that is exactly what occurred here. There's just no dispute that Ms. Campos exited, returned to the scene, provided her information to the driver of the other vehicle, complied fully with the law enforcement officer, stayed for the entirety of the investigation. Mr. Russo, didn't Mr. Caballos say that it was dangerous to remain where he had stopped her car two miles down the road and not where he was, not where the accident actually occurred? That is what he testified. And the reason that he testified that it was unsafe to do so is that they were pulled over on the shoulder of a highway where cars were rapidly driving past them. There was no evidence that those conditions were any different at the point where his vehicle came to stop and contact the police and figure out how to return to the scene of the accident. She's already passed his vehicle. And so she's driving along the road, the highway where there's a shoulder to pull over. And the circumstances are as described by Mr. Caballos, a tight and dangerous situation where the cars that are passing them are in danger of striking them. Isn't that always the way along the side of the highway? Yes. And because the law requires that she stop and return to the scene, she's certainly not going to turn around and drive again into the wrong way into traffic. So she needs to find a way to exit and come back to the scene and safely do so. So that's why the law specifically has the two options. Sometimes it's not possible to immediately stop at the scene of an accident. Sometimes you need to stop as soon as safely possible and return forthwith. The law specifically allows for that option and that is the option that Ms. Campos did in this case. There simply was no crime committed. She complied with the statute and that was the undisputed evidence in this case. The fact that once Mr. Caballos enters her vehicle, this supposed keeping her from fleeing, they proceeded onward to do exactly what Ms. Campos was already doing. So when Mr. Caballos is in the vehicle, they proceed to the nearest exit and then turn around to the scene of the accident. So the state is trying to characterize what Ms. Campos did both initially on her own and then with Mr. Caballos in the car as fleeing the scene of an accident rather than what it really was, which is stopping as soon as possible and returning forthwith. Counselor, you suggested that she was discombobulated and that seems to be a very plausible explanation for what was going on, but how do you reconcile your conscious decisions that she's making to not stop in that area with the fact that she was driving the wrong way down the road? Isn't it more likely that she was discombobulated the whole time? Well, I'm not sure if I totally understand your question, Your Honor, but certainly she was discombobulated the whole time. Let me say it another way. You characterized her behavior as accidental or discombobulated was your word, but it was not intended that she didn't make a conscious decision. But then as soon as the accident occurs, you're arguing that she makes conscious decisions to not stop because it wasn't safe. Correct? Correct. I mean, I think both things can be true. I mean, she's certainly flustered, panicked, her daughter's crying, and she's trying to figure out the next best thing to do, how to you know, there was a slightly better option than the option she chose. The perfectly legal option that she chose under the statute, she acknowledges that, you know, she's sorry for what she did. Maybe she could have handled it somewhat better, but she didn't flee the scene of an accident. She stopped as soon as she could figure out the way to safely do so and return forthwith. And that's because she was stopped. She was pulled over. The people that were chasing her they pulled up next to a car and stopped her, correct? No, I mean, there's no evidence that that's true. That's pure speculation on the part of what Ms. Campos' mindset or ulterior motive was. And when Mr. Caballos attempted to testify to that, the trial court judge rightfully sustained the defense's objection as to his speculation as to her mindset. What the evidence is, is that they proceeded onward to the nearest exit and turned around and returned to the scene, which is what she testified she was going to do, and which is what in fact happened, and is what happened with Mr. Caballos in her car. So there's no evidence that she was not going to return to the scene of the accident, but for Mr. Caballos' actions. That's pure speculation and does not constitute evidence or proof beyond a reasonable doubt that she was fleeing. Mr. Russo, you would acknowledge that after she did the three-point turn, after the realization that she was going the wrong direction, she pulls back, sees the accident, sees the young man on the side of the road who's been ejected from the truck or the car, and then stops about 15 feet from the scene, then leaves that spot after she's determined that that is a dangerous place to stop, correct? Not exactly, Your Honor. What's described as her stopping in that moment is part of her executing this U-turn, three-point turn. And it's not clear, and there certainly was no evidence that she specifically observed Juan Carlos on the side of the road at that moment. But the evidence, and this is through Mr. Caballos' testimony, is that that whole series of events, from observing her crossing the three lanes of traffic, driving southbound the wrong way, turning around, executing the U-turn or three-point turn with a pause in the shoulder, and then proceeding on northbound, was a minute at most. So what the state is trying to characterize as a stop and then fleeing in response to him chasing is just her executing this turnaround I mean, this is unfolding in a matter of seconds, according to the evidence in this case. So this is not a stop at the scene, a calm reflection on everything that's transpired. There's no evidence that she actually observed Juan Carlos and then decided to take off. That's just not the evidence in this case. The state has argued to commit misconduct of a crime that could have but did not actually occur. Their whole case is premised on the notion that Ms. Campos was intending to flee but got caught and was forced to return. But there is no evidence that Ms. Campos did anything other than what she was intending to do all along, which was to safely stop and return to the scene, provide her information to the driver and police, and remain until the investigation was complete. And that is exactly what she did. I see my time has expired. Thank you. Thank you, Ms. Urruta. You will have five minutes for a rebuttal if you have any. Mr. Trejo. Good morning. May it please the court, counsel, Adam Trejo on behalf of the people of the state of Illinois. On appeal, defendant only contests one element, the element that she failed to stop. She doesn't contest that she didn't know that she was involved in an injury involving another person. It's just one element, the stop. And pursuant to the statute, it's not just enough that you stop. You must stop and render aid. And at the trial, defendant testified that she never called the police. And it's reasonable assistance. The statute doesn't require that, one, a defendant stop and get out of her vehicle, and regardless of the circumstances, and check on this victim, they must provide reasonable assistance. And as the evidence revealed itself, she had her phone on her person. So she could have stopped, as she did, on the shoulder of the highway and call 911. So an ambulance could come and tend to Juan Perros. That's reasonable assistance, and she did not do that. Again, it's a two-part. You must stop and render reasonable assistance. And I'm going to recite the evidence by Mr. Ceballos. Mr. Ceballos testified that defendant came towards him onto oncoming traffic. He swerved. The vehicle hit a rail, causing Juan Carlos to fly out of the Chevy Tahoe. Now, as opposing counsel indicates, defendant made a U-turn and continued going. Mr. Ceballos testified. He yelled at the vehicle to stop. Stop. Hey, stop, stop, stop. And what does the defendant do? She stops, and pursuant to the testimony by Mr. Ceballos, she pulls over onto the shoulder. So an individual has flagged her to stop, and she knows she went onto oncoming traffic. She knows, oh, I could have caused an accident, and she did. And opposing counsel is not contesting the element that she knew that she caused an accident. So she pulls over onto the side of the shoulder, completing the stop. And Mr. Ceballos approaches the defendant, and as he is approaching her, the defendant makes the conscious decision to flee the scene after she had successfully pulled over onto the shoulder. Defendant's argument on appeal is reweighing the entire evidence, which this court is not supposed to do. She committed the crime when she failed to provide reasonable assistance after pulling over. Now, the state does acknowledge that there's no absolute duty to stop given the circumstances, but the evidence adduced at trial revealed that nothing absolved her of her duty. The testimony revealed that this happened on a sunny day in June of 2019 at 4 45 p.m. The conditions were described as sunny, dry, and clear. Mr. Ceballos testified that there was very light traffic. After the incident, all the cars started to slow down. And I'd like to emphasize two important facts. Other individuals, including families, stopped to render assistance, completely negating the defendant's position that it was unsafe for me to stop. No, multiple people stopped. I'd like to point out that we had a witness who was driving on the other side of the median, going southbound. That individual stopped onto the side of the road, crossed the median, and jogged to Juan Carlos and held him until medical personnel could arrive. Furthermore, Mr. Ceballos testified that other people were standing around, so other individuals were successful in pulling over and tending to this family and a man who was just ejected from a car. There was also testimony by Juan Carlos that a family consisting of a mother, father, and daughter did pull over and assist him. So there were no circumstances based on the evidence absolving her of her duty. Her claim that she couldn't have stopped at the scene is contradicted by the fact that she did pull over onto the shoulder of the highway. She got scared and she ran away, but the intent of the defendant, that's not part of the statute. That is not an element that she intended to cause an accident. The mens rea of the offense is knowledge. Knowledge of an accident involving another person. That is what the state needed to prove. Did not need to prove any intent on behalf of the defendant. The defendant demonstrated she had the capacity and ability to pull over and she did. She saw the victim's father walk to her and she fled the scene. Evidence of flight is consciousness of guilt. She drove two miles within that travel distance. She did not pull over. She did not take an exit. Furthermore, easiest thing she could have done while driving that two-mile distance, she could have used her to render assistance. It's stopping and rendering assistance. She did not do that. The only reason she came back was because Mr. Saviles had to flag her down and come back. Even when she came back, she did not provide any assistance at all whatsoever. The evidence is clear. The trial judge explicitly concluded that the defendant could have stopped right away. That was a finding by the trial fact in this case that's supported by the evidence and it was proven beyond a reasonable doubt. Absent any other further questions on the facts or the case law, the people of the state of Illinois respectfully request that this honorable court affirm defendant's conviction. Are there any further questions? No. No. Okay. Thank you, Mr. Trejo. Ms. Yaruso, any rebuttal? Yes. Thank you, your honor. I'd like to address a couple of things that the state argued. First of all, the state stated that the statute requires that she stop and render aid. The language of the statute, and I will read it to you, is that driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close there to as possible and shall then forthwith return to and in every event shall remain at the scene and provide their information until the requirements of section 11403 have been fulfilled, which is to provide the information. So the statute does not require her to stop and render aid. It requires her to stop and remain at the scene or stop and return to the scene and remain there, and that is exactly what she did. As the state argued, the intent of the defendant is not part of the statute, yet that is exactly what they're making this case about. Their speculation as to her intent to flee rather than what she actually did do in this case, which was to stop and return to the scene of the accident. She provided all her information to the other driver. She cooperated fully with enforcement and she remained during the entire investigation. The state also argued that during the two miles that she was driving, she didn't take some other exit. Well, as what's clear from the evidence is that she stopped at the nearest exit because that's what she did once Mr. Caballos was in the car with her. Evidence of what other people did is also not evidence of that Ms. Campos failed to stop at the scene of the accident. There was evidence only specifically of what two other individuals did. First, there was Mr. Vissering who was driving on in the other lanes of traffic on the other side of the median. He pulled over to the side of the road, apparently jogged across the multiple lanes of highway traffic. He testified that he climbed over a median and that he was rendering a Taman Carlos. Now, Mr. Vissering is a trained firefighter and paramedic and was using his training to respond in this emergency situation. But the fact that he responded as he did, perhaps heroically, perhaps even a little recklessly by running across the highway and climbing over a median does not mean that Ms. Campos fled the scene of Mr. Vissering dead. Not to mention, while he's doing that, she was busy turning around so that she wasn't driving the wrong way. Likewise, the scant evidence of some other family stopping, which the only evidence is Juan Carlos's testimony of a mom, a dad, and a daughter. We don't know how old this daughter is. We don't know how that family came to observe what unfolded, when they came to stop, how long after the events had unfolded, how they were able to safely do so approach. There's just no evidence of that. And so to say that that is somehow evidence that Ms. Campos failed to stop or left the scene of the accident, it just isn't true. It's not an accurate characterization of the evidence and it doesn't satisfy the state's burden of proof beyond a reasonable doubt that Ms. Campos left the scene of an accident, failed to stop at the scene of accident involving personal injury, let alone proof beyond a reasonable doubt. They failed to prove the essential elements that Ms. Campos committed a felony by leaving the scene. Because evidence of what others did is not evidence of what Ms. Campos did. Evidence that Ms. Campos briefly stopped is not evidence that she fled. The state mischaracterized and completed a stop, saw Mr. Caballos and then chose to continue on. The evidence is that she was executing the U-turn, three-point turn during a 60-second time span when this stop occurred and that she continued onward the same way she did once Mr. Caballos was in the car with her. The state's case consists of a post-hot critique of Ms. Campos's actions and speculation as to what could have happened or what Ms. Campos was attempting to do rather than what she did do and what actually happened. And what actually happened in this case and what the undisputed evidence shows is that Ms. Campos stopped as soon as safely possible, that she returned to the scene of the accident, that she provided all of her information to the other driver and law enforcement and that she remained at the scene during the entire investigation. Ms. Campos fully did what the law requires under the second option contained in the statute that she stopped as soon as possible return forthwith, remain at the scene and provide the required information. The appellant has demonstrated today that the state did not meet its burden of proving beyond a reasonable doubt that Ms. Campos committed the crime of leaving the scene of an accident and we respectfully ask that this honorable court reverse the felony conviction in this case. Are there any further questions for Ms. Campos? If not, we will take the matter under advisement and will issue a written decision as quickly as possible. Thank you.